**SEALED**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUDE AKHIGBE, HAPPY CHUKWUMA,<br>and UCHE SOLOMON,<br><br>Defendants | Crim. No. 19-CR 10300<br><br>Violations:<br><br>Counts One and Two:  Wire Fraud Conspiracy<br>(18 U.S.C. § 1349)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. Jude Akhigbe ("AKHIGBE") lived in Nigeria.

2. Happy Chukwuma ("CHUKWUMA") lived in Nigeria

3. Uche Solomon ("SOLOMON") lived in Nigeria.

4. Victim 1 was a Somerville, Massachusetts resident.

5. Victim 2 was a Lynn, Massachusetts resident.

6. Victim 3 was a Gloucester, Massachusetts resident.

7. Victim 4 was a Lawrence, Massachusetts resident.

8. "Phishing" refers to unlawful attempts to obtain sensitive information such as usernames, passwords, financial account information, names, addresses, dates of birth, social security numbers, and other similar types of information (collectively "personally identifiable information") through fraud.  Perpetrators of this type of fraud typically send emails to victims that purport to come from trusted sources.  In many cases, these trusted sources are well-known financial institutions, educational institutions, social media companies, or e-commerce

companies. The phishing emails often encourage recipients to click a hyperlink that appears to take the email recipient to the website of that trusted company, but in fact directs the recipient to a decoy website controlled by the senders of the phishing email. When the email recipients enter their personal information (e.g., usernames, passwords) into the fields on the decoy website, that information is collected or "harvested." That personal information is then accessible to the individuals who deployed the phishing email. Collectively, the decoy website files and the software used to harvest the credentials and to transmit or store the credentials are known as a "phishing kit."

9. Phishing kits are generally designed either to send the harvested information to a specific email address controlled by the individuals who control the phishing kits, or to compile the information in a particular location (e.g., a compromised server) where it can be retrieved by those individuals.

10. "Spear phishing" refers to the use of phishing techniques to target specific individuals or a specific group of individuals, generally by crafting the emails in a more personalized manner, which increases the likelihood that the targeted individual or individuals will be deceived.

11. Account credentials and other personally identifiable information obtained from phishing can be sold on black markets and/or used to access without authorization the accounts of victims in order to further perpetuate various frauds.

12. A "money mule" is a person who is recruited for the purpose of receiving, withdrawing, and transferring proceeds of criminal activity. Money mules often either use their own bank accounts or open bank accounts for this purpose. While some money mules are aware

of the underlying criminal activity, or willfully blind to it, others believe that there is some legitimate purpose to the financial transactions.

13. "Work from home scams" recruit individuals through advertisements seeking employees to work from home, promising the worker that he/she can do a simple task in a minimal amount of time and earn income. The individuals that answer the advertisements then become money mules—allowing the perpetrators to advance their criminal operation and/or launder funds, while maintaining anonymity.

14. "Romance scams" recruit individuals through advertisements for online relationships on dating or social media websites. Individuals perpetuating romance scams create fictitious profiles and then use them to gain the trust of others on the site through a purported romantic relationship. The perpetrators then direct their victims to engage in financial transactions under false pretenses—turning the victims into money mules, again with the purpose of advancing a criminal operation and/or laundering funds while maintaining anonymity.

Overview of Wire Fraud Conspiracy Between CHUKWUMA and SOLOMON

15. From at least on or about November 6, 2015, and continuing until at least January 4, 2019, defendants CHUKWUMA and SOLOMON conspired with each other and with others unknown to the grand jury to obtain money and personally identifiable information through misrepresentations made via foreign and interstate wire communications with individuals in the United States, including in the District of Massachusetts.

Manner and Means of the Wire Fraud Conspiracy Between CHUKWUMA and SOLOMON

16. Among the manner and means by which CHUKWUMA and SOLOMON and co-conspirators unknown to the Grand Jury carried out the wire fraud conspiracy were the

3

following:

    a. Deploying phishing kits designed to obtain, through misrepresentations made in interstate and foreign wire communications, personally identifiable information of individuals in the United States.

    b. Obtaining and possessing the personally identifiable information sent via phishing kits, which included usernames and passwords for online accounts of United States individuals, with the intention of using those credentials for profit.

    c. Communicating with co-conspirators via email and Google "chats" via the Google Hangouts application.

    d. Using multiple online accounts and VPN services to hide their identities and avoid law enforcement.

    e. Creating fraudulent documents, including fraudulent bank checks.

<u>Acts in Furtherance of the Wire Fraud Conspiracy between CHUKWUMA and SOLOMON</u>

    17.    CHUKWUMA, SOLOMON, and co-conspirators unknown to the Grand Jury, committed and caused to be committed the following acts in furtherance of the conspiracy:

    a. Between November 6, 2015 and January 4, 2019, SOLOMON and CHUKWUMA discussed personally identifiable information they had obtained and exchanged victim information, including copies of victims' identification documents (including drivers' licenses and a military ID) and financial documents (including copies of credit cards, personal checks, and bank statements). SOLOMON and CHUKWUMA also discussed the creation of fraudulent invoice documents, and attempts at manipulation of the aforementioned items utilizing

  graphic tools.

 b. On February 5, 2016, SOLOMON sent himself an email with the subject line "Notepad" from one of his email accounts to another of his email accounts. The document contained personal identification information for twenty-eight individuals, including Victim 1, a Somerville, Massachusetts resident, and Victim 2, a Lynn, Massachusetts resident. Specifically, the document contained victim email account information, usernames and passwords, bank routing numbers, security questions and answers, birthdates, Social Security Numbers, and full names. On August 30, 2016, SOLOMON emailed the same information to an individual who is unknown to the Grand Jury.

 c. On March 1, 2017, SOLOMON asked CHUKWUMA to install a VPN service in order to anonymize his IP address. He also provided CHUKWUMA with instructions to create a fraudulent check.

 d. On June 20, 2018, SOLOMON received an email containing the name, address, date of birth, and credit card number of Victim 4, a Lawrence, Massachusetts resident, from a co-conspirator unknown to the Grand Jury.

<u>Overview of Wire Fraud Conspiracy Between AKHIGBE and SOLOMON</u>

18. From at least on or about April 4, 2017 and continuing until at least December 28, 2017, defendants AKHIGBE and SOLOMON conspired with each other and with others unknown to the grand jury to obtain money and personally identifiable information through misrepresentations made via foreign and interstate wire communications with individuals in the United States, including in the District of Massachusetts.

Manner and Means of the Wire Fraud Conspiracy Between AKHIGBE and SOLOMON

19. Among the manner and means by which AKHIGBE and SOLOMON and co-conspirators unknown to the Grand Jury carried out the wire fraud conspiracy were the following:

    a. Deploying phishing kits designed to obtain, through misrepresentations made in interstate and foreign wire communications, personally identifiable information of individuals in the United States.

    b. Obtaining and possessing the personally identifiable information sent via phishing kits, which included usernames and passwords for online accounts of United States individuals, with the intention of using those credentials for profit.

    c. Sending email correspondence in furtherance of a "work from home scam" to United States individuals, including individuals residing in Massachusetts, and having those individuals then act as money mules to receive and transfer funds under false pretenses.

    d. Using deception to convince United States individuals to engage in romantic online relationships, and having those individuals then act as money mules to receive and transfer of funds under false pretenses.

        a. Communicating with co-conspirators via email and Google "chats" via the Google Hangouts application.

Acts in Furtherance of the Wire Fraud Conspiracy between AKHIGBE and SOLOMON

20. AKHIGBE, SOLOMON, and co-conspirators unknown to the Grand Jury, committed and caused to be committed the following acts in furtherance of the conspiracy:

a. Between April 4, 2017 and December 28, 2017, SOLOMON and AKHIGBE exchanged victim financial account information, tax information, and online banking login credentials over the course of multiple "chat" conversations.

b. On August 9, 2017, AKHIGBE sent SOLOMON an image of an August 8, 2017 Western Union money order receipt for a wire in the amount of $1,950. The receipt indicated it was sent by Victim 3, a Gloucester, Massachusetts "work from home" fraud victim, to an individual known to the Grand Jury.

c. AKHIGBE also sent SOLOMON excerpts of his email correspondence with Victim 3, which demonstrated that AKHIGBE led Victim 3 falsely to believe that Victim 3 was assisting with facilitating personal errands for AKHIGBE.

d. During the same time period, AKHIGBE and SOLOMON also exchanged chats concerning "romance scam" narratives, including draft messages to victims throughout the United States and victims' purported responses to the "romance scam" narratives.

## COUNT ONE
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

The Grand Jury charges:

21.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

22.     From in or about November 6, 2015, until in or about January 4, 2019, in the District of Massachusetts, and elsewhere, the defendants,

**HAPPY CHUKWUMA, and**
**UCHE SOLOMON,**

conspired with each other and with others unknown to the Grand Jury to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

The Grand Jury further charges:

23. The Grand Jury re-alleges and incorporates by reference paragraphs 1-14, and 18-20 of this Indictment.

24. From in or about April 4, 2017, until in or about December 28, 2017, in the District of Massachusetts, and elsewhere, the defendants,

JUDE AKHIGBE, and
UCHE SOLOMON,

conspired with each other and with others unknown to the Grand Jury to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

25. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1349, set forth in Counts One and Two of this Indictment, the defendants,

**JUDE AKHIGBE,**
**HAPPY CHUKWUMA, and**
**UCHE SOLOMON,**

shall forfeit to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), (a) any property, real or personal, which constitutes, or is derived from, proceeds traceable to the commission of such offenses.

26. If any of the property described in Paragraph 25 above, as a result of any act or omission of the defendants:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third party;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 25 above.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
MACKENZIE A. QUEENIN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: August 20, 2019
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK
HAROLD G. PUTNAM
8.20.2019 @ 11:37am

11